(81 P.3d 1254)

No. 89,500

STATE OF KANSAS, *Appellee,* v. BILLY J. RANDLE, JR., *Appellant.*

Opinion filed January 9, 2004.

*Michelle Davis*, assistant appellate defender, for appellant.

*Kristi L. Barton,* assistant district attorney, *Nola Foulston*, district attorney, and *Phill Kline*, attorney general, for the appellee.

Before RULON, C.J., GREEN, J., and STEPHEN D. HILL, District Judge, assigned.

HILL, J.: Billy J. Randle, Jr., appeals his conviction of robbery, claiming insufficient evidence and improper jury instructions. When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether after review of the evidence, viewed in the light most favorable to the prosecution, an appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Beach*, 275 Kan. 603, Syl. ¶ 2, 67 P.3d 121 (2003). We affirm.

Randle, originally charged with aggravated robbery, was convicted by a jury of robbery. "Robbery is the taking of property from the person or presence of another by force or by threat of bodily harm to any person." K.S.A. 21-3426. Randle argues that the evidence in his case was insufficient to support a robbery conviction because he did not use force to take the property. He claims that any force he used occurred after the taking was completed. Therefore, he did not commit robbery.

Vickie Myers, an employee of a vending machine company, drove her company van into a store parking lot in order to service a snack machine within the store. After arriving in the parking lot, Myers parked and climbed into the back of the van where she knelt with her feet hanging out of two open cargo doors. A canvas bag filled with $400 in quarters was resting against her right knee.

Myers noticed a red car, driven by a black male, pull into a parking space next to the van. The car parked approximately 5-7 feet away from the van. A few minutes later, someone brushed against Myers' right knee and grabbed the bag of quarters. Myers turned and saw a black male with braided hair, wearing blue jeans and a black coat, get into the driver's side of the red car.

She immediately got out of her van, went over to the car and reached through the open driver's door, attempting to recover the money bag. As Myers leaned into the car, one of her feet was on the ground and the other was on the car's doorsill. When she could not reach the money, she began pushing buttons on the dashboard, attempting to detain the car. The man pushed Myers a few times in an attempt to get her out of the car. The car began moving. Myers remained with the moving car with one foot on the doorsill and one hanging out the door until the car reached the front of her van where she jumped off, landing on her feet.

Myers got the license tag number of the car and called 911. Later, based on the tag number and her description of the car and suspect, police officers arrested Randle.

Randle claims that the taking was completed when he placed the money inside his car. We believe Randle did not obtain complete, independent, and absolute possession and control of the money until he drove away from the scene.

This case is similar to *State v. Bosby*, 29 Kan. App. 2d 197, 24 P.3d 193, *rev. denied* 271 Kan. 1038 (2001). In *Bosby*, the defendants, Bosby and Jones, stole a pickup truck and decided to steal a lawnmower they saw as they passed by a residence. The owner of the lawnmower said that as she approached the pickup truck, Jones jumped into the passenger's side of the truck as Bosby attempted to start the truck. She said that as she stood by the open driver's side door, Jones leaned over and hit her, causing her to fall to the ground. Jones exited the truck and began punching her. When Bosby finally started the truck, Jones jumped back in and the two drove away. The *Bosby* court concluded that the men had committed robbery and held that "[i]n order to constitute a taking, the prospective robber must have obtained at some particular moment the *complete, independent,* and *absolute* possession and control of the thing desired adverse to the rights of the owner therein." (Emphasis added.) 29 Kan. App. 2d at 204. The *Bosby* court concluded that the men had not left the owner's property when she either attacked them or they struck her preemptively. The court found that the defendants used force to take possession of the property, removed it from the owner's presence, and inflicted bod-

ily harm in the process, which constituted aggravated robbery in that instance. 29 Kan. App. 2d at 204.

In Randle's case, Myers exited the van pursuing Randle immediately after he grabbed the bag. She got to his car, only 5-7 feet away, before he was even able to shut the car door. Myers then reached into the car attempting to grab the money, and Randle pushed her away. She did not give up her struggle for recovery of the money until the car began moving, at which point she jumped off the car and Randle drove off. Clearly, Randle did not have complete, independent, and absolute possession and control over the money until he drove away.

Such facts differ from *State v. Aldershof*, 220 Kan. 798, 556 P.2d 371 (1976), a case cited by Randle.

It has long been the rule in Kansas that

"[t]o constitute the crime of robbery by forcibly taking money from the person of its owner, it is necessary that the violence to the owner must either precede or be contemporaneous with the taking of the property and robbery is not committed where the thief has gained peaceable possession of the property and uses no violence except to resist arrest or to effect his escape." *Aldershof*, 220 Kan. at 803.

This rule was followed in *State v. Bateson*, 266 Kan. 238, 970 P.2d 1000 (1998).

Randle argues that when he removed the money from Myers' van, he left the owner's property and retreated to his own car. He argues that the "taking" was then complete and any subsequent course of events could not turn theft into a robbery. This argument fails. A thief does not obtain peaceable possession and control of money where the taking is immediately resisted by the owner before the thief can remove it from the premises or from the owner's presence. *State v. Long*, 234 Kan. 580, 586, 675 P.2d 832 (1984). Randle did not leave the premises until he drove away. The van was not "the premises"; the parking lot was the premises.

Furthermore, Randle clearly exerted force when he pushed Myers in an attempt to get her off his car. This violence preceded the taking of the property which occurred when Randle drove away. The evidence is sufficient to support Randle's robbery conviction.

Randle believes the trial court erred when it failed to instruct the jury on the definition of "presence" when the jury made an

inquiry during its deliberations. The jury sent the following written questions to the trial judge:

"[W]here the taking is instantly resisted by the owner, . . . remove it from the premises or the owner's immediate presence.
1) What are we to assume instantly is in this statement and
2) What is [sic] the immediate presence of the owner mean?'"

The trial judge wrote in response: "The Court's instructions are the law of the case. Unless I specifically defined a word in the instructions, all words are to be given their common, ordinary meaning. Please reread, carefully, the instructions." The defense counsel concurred with the prosecutor who stated, "I believe the Court's response as just read is appropriate and we have no other request." Randle now argues that the trial court erred.

When we focus on instructions,

"[u]nless the instruction is clearly erroneous, no party may assign as error the giving or failing to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds of his or her objection. . . . Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility that the jury would have rendered a different verdict if the error had not occurred. [Citations omitted.]" *State v. Davis,* 275 Kan. 107, 115, 61 P.3d 701 (2003).

Since defense counsel failed to object when the court declined to define "presence" for the jury, it is only reversible if it is clearly erroneous to not define "presence."

We do not think the trial court needed to give the defining instruction for the word "presence" because it is a word widely used and readily comprehensible. A trial court need not define every word or phrase in the instructions. It is only when the instructions as a whole would mislead the jury or cause it to speculate that additional terms should be defined. A term which is widely used and which is readily comprehensible need not have a defining instruction. *State v. Requena,* 30 Kan. App. 2d 200, 206, 41 P.3d 862 (2001), *rev. denied* 273 Kan. 1039 (2002).

Furthermore, all of the instructions read together as a whole properly and fairly stated the applicable law. We do not think a jury could reasonably be misled by them. The trial court's instruc-

tion on robbery clearly set forth the elements of robbery and then added:

> "To constitute the crime of robbery, the force used in the taking of the property must precede or be contemporaneous with the taking. In determining whether the taking of the property constitutes a robbery or a theft, the test is whether or not the taking of the property had been completed at the time the force occurred. The taking of property is not complete until the would be taker has complete, independent, absolute and peaceable possession and control of the thing desired adverse to the rights of the owner. Peaceable possession of property is not obtained where the taking is instantly resisted by the owner, before the would be taker is able to remove it from the premises or the owner's immediate presence. Robbery is not committed where the defendant has gained peaceable possession of the property and uses no violence except to resist arrest or to effect his escape."

We find this instruction on robbery provides all the applicable rules that have been established by appellate cases dealing with the subject. These instructions, when read together as a whole, properly and fairly state the law.

Finally, even if the trial court had instructed the jury on the definition of "presence," the jury most likely would not have rendered a different verdict. We do not think that the trial court's failure to instruct the jury on the definition of "presence" is clearly erroneous because we see no real possibility that the jury would have rendered a different verdict had it received such an instruction. *Davis*, 275 Kan. at 115.

In *State v. Glymph*, 222 Kan. 73, 74-75, 563 P.2d 422 (1977), the court defined "presence" in the context of a robbery, as

> "a possession or control so immediate that violence or intimidation is essential to sunder it. A thing is in the presence of a person with respect to robbery, which is so within his control that he could, if not overcome by violence or prevented by fear, retain his possession of it."

If this definition of "presence" had been applied to the facts of this case, Myers' presence would have been the interior of her van as well as the area within a few feet of her body. Randle grabbed the money next to Myers' knee as she knelt within the van. The money was clearly in her presence at that point. Randle then carried the money to his car, which was only 5-7 feet away. Myers, immediately upon seeing Randle's hand grab the money, turned

and pursued him to his car where she struggled to retrieve the money. The money was less than 5-7 feet away from Myers at all times. Randle was unable to remove the money from Myers' presence until he drove away. We do not believe that a jury would have returned a different verdict had it received the definition of "presence" as set out above. The trial court's failure to provide the definition was not clearly erroneous.

Affirmed.